OPINION OF THE COURT
Joseph M. Lane, J.
The issue presented in this case of first impression involves the construction of the newly enacted legislative statute, subdivision (i) of CPLR 3101 (L 1993, ch 574, eff Sept. 1, 1993). The statute provides: "[i]n addition to any other matter which may be subject to disclosure, there shall be full disclosure of any films, photographs, video tapes or audio tapes, including transcripts or memoranda thereof, involving a person referred to in paragraph one of subdivision (a) of this section [CPLR 3101]. There shall be disclosure of all portions of such material, including out-takes, rather than only those portions a party intends to use. The provisions of this subdivision shall not apply to materials compiled for law enforcement purposes which are exempt from disclosure under section eighty-seven of the public officers law.”
The defendants contend that "transcripts or memoranda” relating to surveillance tapes are not discoverable to the same extent as the tapes themselves are discoverable. The objection presented is that this information constitutes attorney’s work product and is not obtainable under CPLR 3101 (c) or is privileged under CPLR 3101 (b).
The question arises out of videotapes taken surreptitiously of plaintiff Donald Marigliano by investigators for the defendants Barry Krumholtz and Morris Krumholtz for use during trial in order to refute his claim for alleged serious injuries arising out of the accident of June 4, 1987. The issue of liability is not contested. After jury selection, as the trial was about to commence, the defendants conceded liability, acknowledging that due to negligence, their motor vehicle was caused to strike the plaintiff Donald Marigliano, causing his leg to be crushed against the rear of the double parked truck which he was unloading.
Prior to the commencement of the damages portion of the trial, the defendants’ attorney in court turned over, for examination by the attorney for the plaintiffs, the videotapes taken of the injured plaintiff unbeknownst to him. These tapes *598 allegedly show him walking along a sidewalk, carrying two shopping bags after having exited a supermarket. The contention of the defendants is that this activity shows the injured plaintiff engaged in activity inconsistent with his purported condition.
The plaintiffs’ attorney asserts that they are entitled to see any existing notes or memos relating to the tapes prepared by defendants’ representatives pursuant to the language of CPLR 3101 (i). The crux of the matter is the significance of the words "transcripts and memoranda” in the statute. Is it all embracing so as to include, for example, any and all memos or notes found in the file relating to attorney’s proposed use of the tapes during trial? The plaintiff asserts that the statute must be taken literally, that is, requiring defendants to turn over all records in their possession affecting the tapes.
The defendant adopts the position that any such material falls within the purview of attorney’s work product under CPLR 3101 (c) or privileged matter under CPLR 3101 (b) and therefore it is not discoverable. The defendants argue that granting disclosure of any memorandum relating to the tapes would violate the inviolability of the attorney/client relationship since it would reveal the attorney’s work product or strategy to the adversary.
Professor David D. Siegel, writing in the New York Law Journal (Sept. 27,1993, at 1, col 1), treats this subject cogently. In partial agreement with the defendants, he observes (at 4, col 2): "[cjertainly we must be able to assume that if a memorandum concerning the tapes contains tactical notes of the attorney, or confidential communications with the client, the statute does not mean to force disclosure of such a work product (otherwise immunized by subdivision [c]) * * * Disclosure only after redaction of the privileged parts should be the most that the statute is construed to demand.”
The question of turning over the videotapes is moot since the defendants have complied with that portion of discovery. In Kane v Her-Pet Refrig. (181 AD2d 257), the Court determined that surveillance evidence (i.e., videotapes and motion pictures) does not constitute an attorney’s work product, although it does constitute material prepared for litigation. Where a party has demonstrated a substantial need to verify the accuracy of the videotapes prior to trial, the Court reasoned that it will permit discovery in order for the accuracy of such potential evidence to be verified by the plaintiff. Its *599 protective status is overcome by plaintiff’s need to verify the accuracy of the video. The gist of the Court’s holding is that liberal discovery helps in the search for truth. It leads to the refinement and focus of the issues, thereby expediting the resolution of litigation. (Supra, at 261, citing Rios v Donovan, 21 AD2d 409, 411; Vandenburgh v Columbia Mem. Hosp., 91 AD2d 710.)
The defendants’ attorney represented to the court that his file contained two memoranda relating to the surveillance tapes filmed by cameraman Robert Kelly on December 8, 1989 and December 13, 1989, respectively, upon instructions from investigators Slavin and Associates. The defendants’ attorney opposed turning the memoranda over to the plaintiffs’ attorney, arguing that these reports were attorney’s work product and not discoverable. Further, it was contended in opposition that the statute was unduly broad or excessive and that it was unconstitutional.
A similar issue was raised concerning the failure of the defendants’ attorney to turn over the memorandum in his possession for a third surveillance tape of the injured plaintiff taken on September 6, 1993 by cameraman Scott Whyte, who was employed by private investigator Ray McMillan.
The court directed the defendants’ attorney to turn over any existing memoranda of all surveillance tapes to the plaintiffs’ attorney for examination in accordance with subdivision (i) of CPLR 3101. The court determined that it is discoverable material. Prior to disclosure, the court authorized redaction of any information contained in the memoranda that constitutes attorney’s work product, such as technical notes or confidential communications between attorney and client, as privileged items. In the event the parties are unable to agree on the matter to be redacted, the memoranda shall be submitted to the court for the purpose of making a determination on the issue of redaction.
In compliance with the court’s order, the two memoranda were turned over by defendants’ attorney to plaintiffs’ attorney for examination in court on October 7, 1993. Subsequently, after locating the third memorandum, the defendants’ attorney turned it over to the plaintiffs’ counsel.
In DiMichael v South Buffalo Ry. Co. (80 NY2d 184), the Court of Appeals reasoned that because surveillance films are so easily manipulated, they must be disclosed before trial in order to permit counsel to verify the accuracy of the images *600 portrayed. The same principle applies logically to memoranda made of surveillance tapes. It is only by examining the memorandum of a tape that an adversary will be able to discover whether the tape has been distorted or manipulated. Though the discovered tape itself may be revealing, it is possible that a review of it may not reveal a subtle distortion. Nuances can conceal easily the true facts. For example, camera angles, lighting and splicing, among other techniques can cause a film or video to be distorted. True images do not always appear paramount on surveillance tapes (supra, at 193). But, by examining the memorandum itself, a hidden manipulation may become apparent from the contents of the document. Therefore, a sense of fairness requires any memoranda be disclosed as part of discovery prior to trial, or at trial as in the case before the court.
The court finds without merit the defendants’ contention that requiring the discovery of surveillance tapes is excessive and unconstitutional. New York law has long favored an open far-reaching disclosure policy (CPLR 3101). Liberal interpretation of the statute has been the hallmark of this policy (Allen v Crowell-Collier Publ. Co., 21 NY2d 403). A mere allegation of infirmity is insufficient to raise an issue under CPLR 3101 (i) where no specific facts are offered to support the claim.
Further, since the parties to a civil action are on an equal footing, with "the only disadvantage threatened is liability to compensate an adversary for damages”, the Court of Appeals has declined to extend to civil cases the protection guaranteed in criminal prosecutions under the Fifth Amendment (Marine Midland Bank v Russo, 50 NY2d 31, 42 [1980]). It observed that the underlying policy of the privilege, designed to protect individuals from oppression at the hands of a State exercising its awesome powers of investigation (citing Baxter v Palmigiano, 425 US 308), may not be used in quasi-criminal proceedings and by logical extension, to a purely civil case. Accordingly, the court finds the defendants have no basis to raise a constitutional issue in the instant civil case.